FILED

JUL 16 2026

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MURPHY R. KITTRELL, JR. and<br>BARBARA C. KITTRELL,<br>　　　　　　Debtors. | BAP Nos. AZ-25-1167-NBC<br>　　　　　AZ-25-1168-NBC<br>　　　　　(related appeals)<br><br>Bk. No. 4:22-bk-01130-BMW |
| MURPHY R. KITTRELL, JR.; BARABRA<br>C. KITTRELL,<br>　　　　　　Appellants,<br>v.<br>CAROL THEISEN; NITIN BOBBY<br>PATEL,<br>　　　　　　Appellees. | Adv. No. 4:22-ap-00123-BMW<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Brenda Moody Whinery, Bankruptcy Judge, Presiding

Before: NIEMANN, BRAND, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

Murphy R. Kittrell, Jr. and Barbara C. Kittrell (the "Kittrells") appeal

the bankruptcy court's judgment denying their chapter 7 discharge

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

pursuant to § 727(a)(4)(A).[1] The bankruptcy court found that the Kittrells knowingly and fraudulently omitted material information from their bankruptcy filings. The omissions related to a trust into which the Kittrells had transferred all assets relating to their medical marijuana business. The Kittrells insist the trust was "blatantly" disclosed in their bankruptcy schedules and the bankruptcy court's findings otherwise were clearly erroneous. The Kittrells also challenge an interlocutory order whereby the bankruptcy court denied an earlier motion by the Kittrells to quash the summons and dismiss the underlying adversary proceeding as stale.[2] Finding no error as to either, we AFFIRM.

## FACTS

This is the Kittrells' fifth bankruptcy filing since 2009. The two immediately preceding cases were also before this same bankruptcy judge and appear to have been dismissed shortly after filing. During this same time, the Kittrells were involved in multiple legal actions in various courts related to their businesses. The Chapter 7 Trustee ("Trustee") identified at least 12 cases filed or pending involving the Kittrells within three years of

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] BAP No. AZ-25-1167-NBC arises from a notice of appeal filed in the adversary proceeding as to the judgment and the interlocutory order. BAP No. AZ-25-1168-NBC arises from a notice of appeal filed in the main bankruptcy case challenging only the judgment.

the current bankruptcy filing. Trustee further noted that approximately $13 million was paid to certain of the Kittrells' creditors within 60 days of the current filing. The two judgment creditors excluded from this prepetition payoff are the appellees in this case, who objected to the Kittrells' discharge ("Appellees").[3]

## A. Living Trust, Children's Trust, and Transfer of Assets

The two judgments held by Appellee Carol Theisen were entered against the Kittrells in 2011 and arose from land and construction loans that were not repaid.[4] The original amount of the judgments totaled $1.5 million plus interest, attorneys' fees, and taxable costs.[5]

In or about 2012, Murphy Kittrell entered the medical marijuana industry. The Kittrells formed two Arizona nonprofit corporations, Greenmed and Purplemed, and obtained licenses for each corporation to cultivate and sell medical marijuana. While medical marijuana licenses must be held by nonprofits under applicable Arizona state law, it is common for such nonprofits to employ for-profit management companies, which take the profits of the business as their compensation. The Kittrells

---

[3] Appellees' proofs of claim collectively total in excess of $4.9 million and were said to represent 99.5% of the total filed claims.

[4] The following factual background is pulled, in large part, from the extensive findings set forth in the Memorandum Decision issued by the bankruptcy court in support of the appealed judgment.

[5] The proof of claim filed by Ms. Theisen totaled $4,113,446.63.

3

initially used a pre-existing limited liability company they owned to serve as the for-profit management company for Greenmed and Purplemed.

Shortly after Greenmed and Purplemed were operational and in the midst of various collection actions, the Kittrells executed a document entitled *Amendment to Murphy and Barabara Kittrell Living Trust* (the "Living Trust Amendment"). Previously, in 2005, the Kittrells had set up a revocable living trust to hold title to their primary residence (the "Living Trust"). The Kittrells were both the settlors and trustees of the Living Trust. The Living Trust Amendment purported to transform the Living Trust into an irrevocable trust. The bankruptcy court would later find that the Kittrells did not treat the trust as irrevocable because they continued to regularly use assets of the Living Trust, including a bank account in the name of the Living Trust, to pay their personal expenses. The Kittrells also purported to retain ownership and/or control of the assets held by the Living Trust.

In April 2014, Murphy Kittrell borrowed money from Appellee Nitin "Bobby" Patel and executed a promissory note in the amount of $340,000 for Mr. Patel's benefit. The funds were purported to be used for the operations of Purplemed. That loan was not repaid, and Mr. Patel ultimately obtained a judgment in 2017.[6]

---

[6] The proof of claim filed by Mr. Patel was in the amount of $813,778.20. Through charging orders obtained prepetition, Mr. Patel apparently received $683,294.25 post-petition.

4

In October 2014, the Kittrells set up a new series of limited liability companies to perform the management services for Greenmed and Purplemed (the "MKHS Entities"). The existing management contract was terminated and new management contracts, nearly identical to the original management contract, were executed with the MKHS Entities. On the same date the articles of organization for the MKHS Entities were filed, the Kittrells established the Kittrell Children's Trust (the "Children's Trust"). The Kittrells transferred the ownership interests in the MKHS Entities to the Children's Trust.[7] Murphy Kittrell testified he directed this restructuring because creditors were interfering with his medical marijuana business. Barbara Kittrell testified that she and Mr. Kittrell formed the Children's Trust to protect their assets against "thieves," who she identified as certain of the Kittrells' creditors.

In October 2019, the Kittrells, the Living Trust, the Children's Trust, and related entities asserted in state court filings that Greenmed and Purplemed had a combined market value of more than $30 million.

In July 2020, the Kittrells executed an amendment and restatement of the trust agreement for the Living Trust, whereby they purported to revoke

---

[7] Specifically, the Children's Trust owns MKHS Holding Company, which owns MKHS, LLC, which owns MKHS Cultivation Services, LLC and MKHS Dispensary Services, LLC. The management services rights for Purplemed and Greenmed were transferred to MKHS Cultivation Services, LLC and MKHS Dispensary Services, LLC at the direction of Murphy Kittrell, who also signed the agreement on behalf of each party.

the 2013 Living Trust Amendment and make the Living Trust once again revocable.

Purplemed was sold in December 2021 for $15 million. The purchaser also had a four-year option to purchase Greenmed for $15 million.

## B. Current Bankruptcy Filing, Schedules, and SOFA

The Kittrells filed their current chapter 7 bankruptcy case in February 2022, two months after the sale of Purplemed closed. Their bankruptcy schedules ("Schedules") listed assets totaling $376,165.39. Liabilities were scheduled at $5.2 million, with roughly $4.7 million of that total attributed to Appellees' judgments. Schedule I indicated both Kittrells were employed by ADND Payroll Services as supervisors, where they had worked for 2 years.[8] The Kittrells scheduled gross income of $21,900 per month and a net cashflow deficit of roughly $44 per month.

The Schedules and Statement of Financial Affairs ("SOFA") listed at least 27 limited liability companies ("LLCs") owned by the Kittrells, all of which were said to have no value with "most" said to be inactive. A box was checked on the SOFA indicating the Kittrells served as an officer, director, or managing director for the listed LLCs, but no further details

---

[8] During the trial of the adversary proceeding by Appellees, the Kittrells' son, Niko Kittrell, testified that Murphy Kittrell performs property management and maintenance services for the family medical marijuana business, and that Barbara Kittrell performs administrative work, but also that the Kittrells are retired and/or full-time nannies for their children.

were provided. Neither Greenmed nor any of the MKHS Entities were included in the lists of associated corporate entities.

When asked to identify "[t]rusts, equitable or future interests in property . . ., and rights and powers exercisable for your benefit" in the Schedules, the Kittrells listed the following:

> Debtors are the Settlors of The Murphy and Barbara Kittrell Living Trust formed on October 27, 2005, which is a revocable trust that holds only one asset: [Debtors'] primary residence located at 10640 E. Elkridge Pl., Tucson, AZ 85730. No value to debtors other than their homestead which is fully exempt.
>
> Debtors are the Settlors of The Kittrell Children's Trust formed on October 20, 2014, which is an irrevocable trust in which Debtors' children are the sole beneficiaries. No value to [D]ebtors.

When asked in the SOFA to identify any property they hold or control for someone else, the Kittrells indicated "no" there was none.

The Kittrells signed both the Schedules and SOFA under penalty of perjury. The Kittrells further testified at trial that they reviewed both the Schedules and SOFA before they were filed and that the Schedules and SOFA were, and are still, complete.

## C.    Adversary Proceedings

In June 2022, Appellees filed their adversary proceeding objecting to the Kittrells' discharge under § 727(a)(4)(A) (the "Appellees' AP"). Citing the limited disclosures noted above in the Schedules and SOFA, the

Appellees' AP asserted the Kittrells' failure to disclose their interest in and control of the Children's Trust was a material misstatement. As support, the Appellees' AP first noted the Schedules and SOFA failed to disclose that the Kittrells are, and always have been, the trustees of the Children's Trust and exercise control over the trust's assets. Second, the terms of the trust agreement allow the Kittrells themselves to be named as beneficiaries of the Children's Trust at any time. The beneficiaries named in the trust agreement are the Kittrells' children.[9] The complaint highlighted that the trust agreement for the Children's Trust contains a Limited Power of Appointment provision which provides:

> (1) During the lifetime of the Grantor, Niko Kittrell shall have:
>
> . . .
>
> (b)   the authority (exercisable in a non-fiduciary capacity) to add to the beneficiaries entitled to receive income or principal **any person or persons who are descendants of the Grantor's parents**, or an organization described by the provisions of section 170(c) and section 2055(a) of the Internal Revenue Code;
>
> (c)   the authority (exercisable in a non-fiduciary capacity) to remove any person as a beneficiary entitled to receive income or principal provided that the remaining beneficiaries **are persons who are descendants of the Grantor's parents**, or an

---

[9] At trial, Niko Kittrell testified the current beneficiaries of the Children's Trust are the Kittrells' children and grandchildren.

8

organization described by section 170(c) and section 2055(a) of Internal Revenue Code; and

    (d)    the authority (exercisable in a non-fiduciary capacity) to revoke the Trusts created hereunder and distribute the trust estate **to any person or persons who are descendants of the Grantor's parents**, or an organization described by the provisions of section 170(c) and section 2055(a) of the Internal Revenue Code[.]

Children's Trust agreement, § 2.03 (emphasis added).[10]

The Appellees' AP further alleged the misstatements regarding the Kittrells control of the Children's Trust were material because the Kittrells used the assets of the Children's Trust, specifically the proceeds from the sale of Purplemed, to pay off millions of dollars of the Kittrells' debt shortly before their bankruptcy filing, while excluding Appellees from such payments. Further, the $15 million option remained for the potential sale of Greenmed. Appellees' counsel advised the Kittrells' counsel of these

---

[10] Later at trial, it was highlighted that the Children's Trust agreement also contains a Power to Substitute Property provision that benefits the Kittrells and provides in relevant part:

The Grantor appoints Murphy Kittrell, Jr., individually, as the Substitutor. The Substitutor shall have the power while Grantor is living, acting solely in a non-fiduciary capacity within the meaning of Code Sec. 675(4)(C), without the approval or consent of any person, including the Trustee, to acquire the assets of any trust held under this instrument, by substituting property of an equivalent value. The Grantor directs that this power is not assignable, and any attempted assignment will make this power void.

Children's Trust agreement, § 2.04.

9

apparent omissions three months prior to filing the Appellees' AP and demanded action before the deadline to file objections to discharge.

A few weeks after the filing of the Appellees' AP, Trustee filed another adversary proceeding against the Kittrells (the "Trustee's AP"). The Trustee's AP relied upon many of the same allegations as the Appellees' AP regarding the Kittrells' control and commingling of assets with the Children's Trust. However, the Trustee's AP sought to avoid, and preserve for the benefit of the bankruptcy estate, the transfer to the Children's Trust of all assets related to the Kittrells' medical marijuana business.

From the limited record provided, the Appellees' AP was not initially pursued in favor of the Trustee's AP.[11] That changed in October 2023, when Trustee and the Kittrells filed a motion for approval of a proposed settlement of the Trustee's AP (the "Settlement"). Appellees filed an objection to the proposed Settlement, asserting the Settlement would "effectively terminate" the Appellees' AP and net only $600,000 for the benefit of unsecured creditors.[12] In response to Appellees' objection, the bankruptcy court set a status conference in the Appellees' AP, to be heard concurrently with the motion to approve the Settlement in November 2023.

---

[11] If the Trustee's AP had been successful, all creditors would have been paid in full, without the need for further legal actions to collect.

[12] Under the proposed Settlement, the Kittrells agreed to pay between $900,000 and $1.26 million, subject to adjustment of certain secured and priority tax claims.

**D.     November 2023 Hearing**

At the November 2023 hearing, the bankruptcy court noted that a condition precedent to the Settlement was that the Kittrells receive a discharge. The court asked Appellees if it was their intent to proceed with the Appellees' AP, which sought to deny such a discharge. The court also noted that a summons had not yet issued in the Appellees' AP. Appellees affirmed their intent to proceed in light of the cessation of the pending trial in the Trustee's AP.

Trustee's counsel observed that Appellees' objection to the Settlement, on the basis of reasonableness, would require an evidentiary hearing. The bankruptcy court suggested that the evidentiary hearing should likely trail the resolution of the Appellees' AP. In response, Trustee's counsel acknowledged that (1) the Settlement would, by its terms, be void if the Appellees' AP was successful, and (2) a large part of the reason that the Kittrells were willing to pay a substantial sum as part of the Settlement was the existence of the Appellees' AP. Arguing that Appellees should not be allowed to derail approval of the Settlement, counsel for the Kittrells protested the failure of Appellees to prosecute the Appellees' AP. Counsel for the Kittrells also suggested she would file a motion to dismiss the Appellees' AP.

The bankruptcy court granted Appellees an additional 10 days to have the summons issued and served with the complaint "given what has

11

happened in this case."[13] A continued status conference was set for the Appellees' AP, with the evidentiary hearing as to the Settlement trailing the resolution of the Appellees' AP. A certificate confirming service of the summons and complaint was filed a few days later.

## E.    The Kittrells' Motion to Quash Summons

The Kittrells filed a motion to quash the summons and dismiss the Appellees' AP in December 2023 (the "Motion to Quash"). The Motion to Quash asserted Appellees were required, by Civil Rule 4(m) (made applicable to the adversary proceeding by Rule 7004), to serve the summons and complaint within 90 days of filing the complaint. Appellees failed to do so and also failed to request an extension. The motion noted the bankruptcy court had issued three separate form orders (the "Procedural Orders") to Appellees—on October 5, 2022, December 12, 2022, and September 6, 2023—requiring action under threat of potential dismissal of the Appellees' AP. The motion acknowledged that Appellees filed requests to set the matter for a status conference in response to the second and third orders. However, no conference was actually scheduled until the bankruptcy court specially set the matter to be heard concurrently with Appellees' objection to the proposed Settlement. The Kittrells' counsel submitted a declaration in support of the Motion to Quash stating she was never notified of the status conference. The Motion to Quash also argued

---

[13] Appellees' counsel who had initiated the Appellees' AP ceased practicing law shortly after the filing and was substituted out of the adversary proceeding.

Appellees did not show good cause justifying the delay and the bankruptcy court abused its discretion in allowing additional time for Appellees to serve their complaint at the conclusion of the November 2023 hearing.

The bankruptcy court set oral argument on the Motion to Quash for February 2024. At that hearing, the bankruptcy court noted that the initial Procedural Order was issued in error, as reflected on the docket. After further oral argument, the bankruptcy court denied the Motion to Quash on the record.

## F.     Trial, Findings and Judgment

The Appellees' AP proceeded to a one-day trial in June 2025, roughly 16 months after the denial of the Motion to Quash. Four witnesses testified: debtors Barbara and Murphy Kittrell, Greg Theisen (who assigned the judgments to Appellee Carol Theisen and had years of business dealings with the Kittrells), and the debtors' son Niko Kittrell. The parties submitted post-trial briefs a month later, and the bankruptcy court took the matter under advisement. On September 5, 2025, the bankruptcy court issued a Memorandum Decision and a separate Judgment denying the Kittrells' discharge. As detailed in the Memorandum Decision, the bankruptcy court found "[o]verall, the Kittrells' testimony regarding the Living Trust and the Children's Trust and their control and dealings with the assets of such trusts was vague, inconsistent, and thus lacking in credibility."

13

In addition to the background generally recited above, the bankruptcy court made the following factual findings:

- Murphy Kittrell testified that he and Ms. Kittrell are not prohibited from using assets in a trust they form to pay for their personal expenses, regardless of whether the trust is labelled or intended to be a revocable or irrevocable trust, unless the trust documents explicitly state that they cannot.

- Barbara Kittrell testified that she was aware of no reason why she and Mr. Kittrell could not change the Children's Trust into a revocable trust just as they had done with the Living Trust.

- The Children's Trust has purportedly never had a bank account or made a distribution to beneficiaries.

- The Kittrells understood that given the language of the Limited Power of Appointment provision, they could be added as beneficiaries of the Children's Trust and/or receive the assets of the Children's Trust in the event the trust agreement was revoked.

- After the 2014 transfer of assets to the Children's Trust, the Kittrells continued to hold themselves out as the owners of the transferred assets, including in soliciting Greg Theisen for further business investments and by pledging trust assets for a 2017 personal loan. Murphy Kittrell also represented he was the sole owner of MKHS Holding Company in a 2019 agreement.

- After the 2014 transfer of assets to the Children's Trust, the Kittrells also continued to use those assets for their own personal benefit. The Kittrells withdrew cash (no less than $42,000 in January 2017 alone) and signed checks and paid bills from an MKHS account. The Kittrells also had personal checks in the name of Murphy Kittrell printed for the MKHS account.

14

- Greenmed remains affiliated with the Children's Trust and MKHS Entities, and Murphy Kittrell testified that he is a director of Greenmed.

The Memorandum Decision then detailed the bankruptcy court's conclusions of law. The bankruptcy court started by laying out the four elements Appellees had to establish, by a preponderance of the evidence, to prevail on their § 727(a)(4)(A) claim: "(1) the debtor[s] made a false oath in connection with the [bankruptcy] case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1197 (9th Cir. 2010). Applying the factual findings, the bankruptcy court found that Appellees met each of these elements.

The court found the Kittrells' failure to disclose (i) their role as trustees of the Children's Trust, (ii) the true nature of their interests in and rights pertaining to the Children's Trust, (iii) the assets held in the Children's Trust, and (iv) connections to various entities and the entities themselves (collectively, the "Omissions") constituted false oaths made in connection with the bankruptcy case. The Omissions were material as they pertained directly to the Kittrells' financial affairs. The Omissions were made knowingly because the Kittrells "have clear knowledge of [Murphy] Kittrell's ongoing undisclosed roles and business connections with entities owned by or affiliated with the Children's Trust." The Kittrells' knowledge of the Omissions was also shown by their acknowledgment that they

signed the Schedules and SOFA and their continued insistence that the documents were complete and accurate.

Finally, the Kittrells' fraudulent intent was established by their testimony that the Children's Trust was established for the purpose of shielding assets from creditors. The Kittrells also remained "elusive" about the trust's assets, the estimated value, and their related business connections. Although the Kittrells asserted an advice of counsel defense as to the relevant trust documents, the Omissions made in the bankruptcy case were separate and attributable to the Kittrells. The bankruptcy court concluded that the record reflected that the Kittrells made the Omissions "in an attempt to conceal assets and information from creditors, [Trustee] and the [c]ourt. The Kittrells are therefore not entitled to a discharge[.]"

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.    Did the bankruptcy court abuse its discretion in denying the Motion to Quash?

2.    Did the bankruptcy court err when it denied the Kittrells' discharge under § 727(a)(4)(A)?

## STANDARDS OF REVIEW

We review the bankruptcy court's order on a motion to dismiss an adversary proceeding for failure to properly serve the summons and

16

complaint for an abuse of discretion. *Oyama v. Sheehan (In re Sheehan)*, 253 F.3d 507, 511 (9th Cir. 2001). The bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings are illogical, implausible, or without support in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

In an action for denial of discharge, we review: (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) its application of the facts to those rules requiring the exercise of judgments about values animating the rules de novo. *Searles v. Riley (In re Searles)*, 317 B.R. 368, 373 (9th Cir. BAP 2004) (citation omitted), *aff'd*, 212 Fed. Appx. 589 (9th Cir. 2006). Factual findings are clearly erroneous if illogical, implausible, or without support in the record. *Retz*, 606 F.3d at 1196 (citation omitted).

We may affirm on any basis in the record. *See Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012).

## DISCUSSION

**A.** **The bankruptcy court did not abuse its discretion in denying the Motion to Quash.**

On appeal, the Kittrells argue the bankruptcy court is required to "promptly" enter a discharge unless a complaint objecting to such discharge is pending. Rule 4004(c). The Kittrells note that the Appellees' AP sat inactive for 491 days. Per the Kittrells, this delay was too long for

17

the Appellees' AP to still be considered "pending" and, therefore, the bankruptcy court abused its discretion in denying the Motion to Quash.[14] More directly, however, the Kittrells' brief asserts the bankruptcy court improperly allowed Appellees "to prosecute their complaint although it sat idle for an unreasonably long period of time because the bankruptcy court wanted to allow [Appellees] to block the [Kittrells'] settlement with the Trustee."

The principal defect in this argument is that the Settlement required, as a condition precedent clearly negotiated by the Kittrells, that the Kittrells receive a discharge. The Trustee's AP did not object to the Kittrells' discharge. Only the Appellees' AP did. Therefore, there would be no reason to include this condition precedent in the Settlement except to derail the Appellees' AP.

Further, the Kittrells have failed to show an abuse of discretion in the bankruptcy court's denial of the Motion to Quash. Rule 7004 sets forth the procedure for serving a summons in an adversary proceeding. Rule 7004(a) incorporates Civil Rule 4(m), which provides in pertinent part that:

> [i]f a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that

---

[14] In support of this argument, the Kittrells cite *Recile v. Ward* (*In re Recile*), 496 F.2d 675, 681 (5th Cir. 1974) (finding a 2½ year extension for objecting to the debtor's discharge "very late" but still appropriate under the facts presented), and *Wolfe v. Tri-State. Ins. Co.*, 407 F.2d 16 (10th Cir. 1969) (reversing a denial of discharge which was not heard for more than 6 years after the bankruptcy filing).

defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Civil Rule 4(m). Thus, Civil Rule 4(m) *requires* a court to grant an extension of time when the plaintiff shows good cause for delay and *permits* the court to grant an extension even in the absence of good cause. *Efaw v. Williams*, 473 F.3d 1038 (9th Cir. 2007). The bankruptcy court has broad discretion under both standards. "[A] plaintiff may be required to show the following factors in order to bring the excuse to the level of good cause: (a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Sheehan*, 253 F.3d at 512 (internal quotations and citation omitted). Factors the court may consider in exercising its discretion to extend the time for service under Civil Rule 4(m) include "a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Efaw*, 473 F.3d at 1041 (quoting *Trovell v. Fedders of N. Am. Inc.*, 160 F.3d 381, 383 (7th Cir. 1998)).

Here, the bankruptcy court found Appellees had established good cause by "sufficiently explain[ing] the delay in issues pertaining to [prior] counsel." The court also noted, in support of good cause, the "lengthy [and active] history of the [Kittrells'] bankruptcy filings and litigation with [Appellees]." Although not explicitly stated in the bankruptcy court's ruling on the Motion the Quash, the Kittrells clearly had actual notice of

19

the Appellees' AP given the condition precedent to the Settlement.[15] Citing

*Sheehan*, the bankruptcy court also indicated it was acting within its broad

discretion to allow the extension, even in the absence of such good cause.

Finally, the bankruptcy court noted Appellees had been active participants

in the current and prior bankruptcies by the Kittrells. Appellees'

involvement in the pending Appellees' AP was, as acknowledged by

counsel for Trustee at the November 2023 hearing, the impetus for the

proposed Settlement. These findings are supported by the record and are

not illogical or implausible. Therefore, the bankruptcy court did not abuse

its discretion in denying the Motion to Quash.

## B.   The bankruptcy court did not err in denying the Kittrells' discharge under § 727(a)(4)(A).

The bulk of the Kittrells' arguments on appeal contest the bankruptcy

court's conclusion that the elements of § 727(a)(4)(A) had been met. The

Kittrells do not generally dispute the historical facts[16] or that the four-part

---

[15] During both the November 2023 and February 2024 hearings, the bankruptcy court repeatedly rebuffed assertions by the Kittrells' counsel that she was not on notice of the Appellees' AP.

[16] In their testimony at trial, the Kittrells did repeatedly suggest that certain historical facts were "mistakes." Both Kittrells suggested the inclusion of the phrase "descendants of the Grantor's parents" was a mistake made by the attorneys who drafted the Children's Trust agreement. The bankruptcy court found these statements not to be credible or supported by the record. This finding is not clearly erroneous, and we give great deference to the bankruptcy court's determination of credibility, particularly in light of the multiple cases and lengthy history of the Kittrells before the bankruptcy court. The Kittrells also did not contest the implications of the language or their repeated use of the assets of the Children's Trust.

test set forth in *Retz* was the correct standard for the bankruptcy court to apply. Instead, the Kittrells contest the bankruptcy court's application of the historical facts to each of the four parts of the *Retz* test. We review de novo each element below.

### 1.    False oath in connection with the bankruptcy case

The first element Appellees were required to show by a preponderance of the evidence is that the Omissions were false oaths relating to their bankruptcy case. "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." *Retz*, 606 F.3d at 1196 (quoting *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007)). At oral argument, the Kittrells asserted the bankruptcy court made two reversible errors—both of which go to the issue of whether a false oath was made.

First, the Kittrells argued there was no omission and, instead, they "exceeded their duties [of disclosure] under §§ 521 and 541" in their Schedules and SOFA. This argument rests on the premise that property held in legal title as a trustee is not property of a bankruptcy estate, as it equitably belongs to the beneficiaries of the trust under applicable state law. *See* § 541(b)(1); *In re Carriage House, Inc.*, 120 B.R. 754 (Bankr. D. Vt. 1990). Per this argument, the Kittrells were not required to disclose the Children's Trust, but did so in an abundance of caution. The Kittrells further assert that they did not control whether they might be added as beneficiaries, only their son Niko Kittrell did. As such, the "mere

21

possibility" of the Kittrells benefiting from the Children's Trust in the future did not make it property of the estate. *In re Kreiss*, 72 B.R. 933, 939 (Bankr. E.D.N.Y. 1987).

The second alleged error, per the Kittrells, was that the bankruptcy court improperly conflated required disclosures and the potential recovery of additional assets through the Trustee's AP. In other words, in finding the Omissions, the bankruptcy court improperly required the Kittrells to disclose assets and interests that would only have become part of the bankruptcy estate if the Trustee's AP had been successful.

Both of these arguments fail. First, the Kittrells completely ignore the findings made by the bankruptcy court related to the Children's Trust. The court found that the Kittrells believed they were not prohibited from using trust assets to pay their personal expenses, and the Kittrells in fact did so. The court also found that the Kittrells continued to hold themselves out as owners of the trust assets, and the Kittrells understood that they could be added as beneficiaries of the Children's Trust. Further, while not mentioned by the bankruptcy court, the Power to Substitute Property clearly provides a direct benefit solely to Murphy Kittrell. The extensive evidentiary record of the Kittrells' repeated use of the property of the Children's Trust belies any suggestion that a personal benefit to the Kittrells was a "mere possibility." As noted above, the Kittrells do not dispute these historical facts which amply support the conclusion that the

Kittrells failed to disclose the true nature of their interests and rights in the Children's Trust.

Second, as to the Kittrells' argument that the bankruptcy court improperly required disclosure of assets and interests that would only become property of the estate if the Trustee's AP had been successful, this argument is circular and a red herring. An omission hindering the pursuit of a preference or fraudulent conveyance may be considered material and warranting a denial of discharge. *See Bell v. Scales (In re Scales)*, 8 B.R. 110 (Bankr. E.D. Va. 1980) (failure to disclose vehicles transferred shortly before bankruptcy filing). This argument by the Kittrells also ignores that several Omissions are unrelated to the Kittrells' alleged fraudulent conveyance of assets to the Children's Trust. For example, Murphy Kittrell testified at trial that he remains a director of Greenmed but there is no mention of this in the SOFA. Niko Kittrell testified under oath that both his parents worked for the family medical marijuana business, but the Kittrells' Schedules bury their source of income as "supervisors" with ADND Payroll Services.

The bankruptcy court did not err in finding that the Omissions constituted false oaths under § 727(a)(4)(A).

### 2. Oath related to material fact

The second element Appellees were required to show is that the Omissions were material. Materiality for purposes of § 727 is broadly defined. *Fogal Legware of Switzerland, Inc. v. Wills (In re Wills)*, 243 B.R. 58, 62 (9th Cir. BAP 1999). "A fact is material 'if it bears a relationship to the

23

debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" *Retz*, 606 F.3d at 1198 (quoting *Khalil*, 379 B.R. at 173). The bankruptcy court found the Omissions were material because they pertained directly to the Kittrells' financial condition.

The Kittrells argued the Omissions were not material because they fully complied with follow-up requests for information from Trustee. The Kittrells further asserted at oral argument that Appellees, the only real parties-in-interest in this case, already knew about the Children's Trust structure and MKHS Entities so there was no need to further disclose.[17] Because Trustee was able to identify and investigate the two trusts, the Kittrells argued the Omissions had no impact on the bankruptcy case and, therefore, are "not grounds for denial of a discharge under § 727(a)(4)(A)." *Wills*, 243 B.R. at 63.

*Wills* does not, however, stand for the proposition that an omission in a debtor's Schedules or SOFA is not "material" if the other parties can and do find the information. In *Wills*, the bankruptcy court determined that the omitted property was not material under § 727(a)(4)(A) because it was of

---

[17] The Kittrells' brief also argued the bankruptcy court cannot hold them accountable for failing to list their business connections with entities associated with the Children's Trust because that deficiency was not explicitly pled in the Appellees' AP complaint. The Kittrells suggested they were, therefore, "never apprised of these alleged deficiencies which were raised for the first time in the court's ruling." The record does not support these contentions.

little value and would not increase the amount paid to creditors. The Panel reversed and remanded finding that the bankruptcy court had applied an incorrect legal standard to determine materiality by only looking to the value of the omitted asset. The Panel in *Wills*, instead, concluded "a statement or omission relating to an asset that is of little value or that would not be property of the estate can be material if it detrimentally affects the administration of the estate." *Wills*, 243 B.R. at 64. *Wills* noted the "fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *Wills*, 243 B.R. at 63; *accord Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992) ("[T]he petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts.").

Here, the Omissions "detrimentally [affected] the administration of the estate." Trustee and all other parties-in-interest, including Appellees, were required to incur substantial costs because of the Omissions. The fact that Appellees may have known some of the Omissions from prior litigation is irrelevant. *Keeble v. Sulmeyer*, 290 F.2d 127, 131 (9th Cir. 1961) ("A false oath cannot be justified on the ground that the person to whom it is made knows or should know the truth despite the falsehood."). Finally, contrary to the inference of cooperation the Kittrells' arguments suggest, the record shows the Kittrells never fully disclosed the information specified in the Omissions. Such lack of candor frustrates the application of

the Bankruptcy Code and usurps the role of the bankruptcy court. "It is the duty of the bankruptcy tribunal . . . and not the privilege of the bankrupt to determine whether the bankrupt may have the benefits of bankruptcy and continue to own any particular property." *Duggins v. Heffron*, 128 F.2d 546, 549 (9th Cir. 1942).

### 3. Oath was made knowingly

The third element Appellees were required to show was that the Kittrells made the Omissions knowingly. "A debtor 'acts knowingly if he or she acts deliberately and consciously.'" *Retz*, 606 F.3d at 1198 (quoting *Khalil*, 379 B.R. at 173). The bankruptcy court found the Omissions were made knowingly because the Kittrells "have clear knowledge of [Murphy] Kittrell's ongoing undisclosed roles and business connections with entities owned by or affiliated with the Children's Trust." The court also noted the Kittrells acknowledged signing the Schedules and SOFA, and further continued to insist the documents were complete and accurate.

The Kittrells argued they did not knowingly fail to schedule the Children's Trust's assets because "the Kittrells enjoy no beneficial interest in the Children's Trust." As noted above, particularly with respect to the Power to Substitute Property, this is both false and contrary to the record presented at trial. Further, even an honest belief that they were not beneficiaries under the Children's Trust would not explain the "undisclosed roles and business connections."

26

The Kittrells' second argument on the "knowingly" requirement is that the bankruptcy court inappropriately relied on Barbara Kittell's statement—both in a prior deposition and as a witness in the current matter—that the Children's Trust was formed because of "thieves." Per the Kittrells, whether the Children's Trust was formed to evade creditors is not an element of this action brought under § 727(a)(4)(A). However, the Memorandum Decision did not cite Ms. Kittrell's "thieves" comment in support of the "knowingly" element, and this argument also fails.

### 4. Oath was made fraudulently

The final element Appellees were required to show was that the Omissions were made fraudulently. To establish this element, Appellees had to demonstrate, as correctly noted by the bankruptcy court: (1) the Kittrells made the Omissions; (2) the Kittrells knew the Omissions were false when made; and (3) the Kittrells made the Omissions with the intention and purpose of deceiving creditors. *Retz*, 606 F.3d at 1198-99. In support of its finding that the Omissions were made fraudulently, the bankruptcy court cited the testimony of both Barbara Kittrell and Murphy Kittrell that the Children's Trust was set up to hinder creditors. The court also noted "the Kittrells have remained elusive about the assets held by the Children's Trust and the estimated value of such assets and their related business connections."

Beyond these findings by the bankruptcy court, the limited information that the Kittrells did provide regarding the Children's Trust

27

was also misleading. Their roles were not solely as "settlors;" they were also trustees and they were employed to work for entities related to the Children's Trust. The business of the Children's Trust was the sole source of their disclosed income, per the testimony of Niko Kittrell. Murphy Kittrell was also an undisclosed director of at least one of the corporate entities created to facilitate those business operations.

Here, as they did before the bankruptcy court, the Kittrells asserted an advice of counsel defense as to the "fraudulently" element. "Generally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts." *Retz*, 606 F.3d at 1199 (quoting *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir. 1986)). The Kittrells argued they "do not understand legalese and did the best they could when completing their [S]chedules and [SOFA]." Next the Kittrells noted that Barbara Kittrell testified that "creditors deserve their money" notwithstanding what the attorney-drafted trust documents provide. Finally, the Kittrells argued that the bankruptcy court's distinction, on the issue of advice of counsel, between drafting the trust documents and reporting those trusts in their bankruptcy filing is "illogical" and "perplexing."

As a preliminary matter, fraudulent intent and credibility are necessarily intwined. "[W]e give great deference to the bankruptcy court's findings, because the bankruptcy court, as the trier of fact, had the opportunity to note 'variations in demeanor and tone of voice that bear so

28

heavily on the listener's understanding of and belief in what is said.'" *Retz*, 606 F.3d at 1196 (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985)). Where there are two permissible views of the evidence, the bankruptcy court's choice between them cannot be clearly erroneous. *Ng v. Farmer (In re Ng)*, 477 B.R. 118, 132 (9th Cir. BAP 2012) (citation omitted). Here, the bankruptcy court found the Kittrells' testimony "vague, inconsistent, and thus lacking in credibility."

The record also contradicts the Kittrells' purported lack of sophistication in legal matters. The Schedules and SOFA list at least 27 separate LLCs and their testimony reflects they were significantly involved in many more. Further, the scale and complexity of the operations and finances of these entities was not insignificant. The sheer number of lawsuits and years of litigation also suggest otherwise. Murphy Kittrell also appeared to be quite confident in his testimony as to what was not explicitly proscribed by the trust agreements.

Finally, again as noted by the bankruptcy court, the alleged mistakes made by the attorneys in drafting the trust agreements have very little to do with how the Kittrells chose to selectively "disclose" the Children's Trust in their Schedules and SOFA. Barbara Kittrell's statement that certain creditors, whom the Kittrells apparently deem legitimate, should be paid is also no defense to fraudulent intent. The Kittrells' continued insistence that the Schedules and SOFA were complete and accurate—even after the

multiple inconsistencies highlighted at trial—further supports the finding the Omissions were theirs alone.

Appellees established each of the required elements of § 727(a)(2)(4), and the bankruptcy court did not err in denying the Kittrells' discharge.

## CONCLUSION

Based on the foregoing, we AFFIRM.